# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH DAKOTA

ROOM 211
FEDERAL BUILDING AND U.S. POST OFFICE
225 SOUTH PIERRE STREET
PIERRE, SOUTH DAKOTA  57501-2463

IRVIN N. HOYT  
BANKRUPTCY JUDGE

TELEPHONE (605) 224-0560  
FAX (605) 224-9020

November 7, 2006

A. Thomas Pokela, Esq.  
Counsel for Al Arendt  
Post Office Box 1102  
Sioux Falls, South Dakota   57101

Bruce J. Gering,  
Assistant United States Trustee  
230 South Phillips Avenue, Suite 502  
Sioux Falls, South Dakota   57102

     Subject:  *In re Lloyd Curtis Johnson*,  
                 Chapter 7, Bankr. No. 05-30023

Dear Counsel:

     The matter before the Court is the United States Trustee's Motion for Examination of Debtor's Transaction with Attorney.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  As set forth below, Attorney Arendt will be directed to return $491 to Kathleen Strohfus.

     *Summary*.  Lloyd Curtis "Curt" Johnson ("Debtor") filed a Chapter 7 petition in bankruptcy on March 29, 2005 (Bankr. No. 05-30023).  His petition was signed twice by Attorney Rose Ann Wendell.  Her first signature was with Debtor's signature under the following declaration, in pertinent part:

> I declare under penalty of perjury that the information provided in this petition is true and correct.

Attorney Wendell also signed and dated Exhibit B of the petition, which provides:

> I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

     Attorney Wendell also signed and filed a Disclosure of Compensation.  Attorney Wendell stated she had received $1,000 from Debtor for costs and analyzing his financial situation and advising

*In re Curtis L. Johnson*
November 7, 2006
Page 2

him regarding bankruptcy; preparing and filing Debtor's petition, schedules, and statement of financial affairs; and representing Debtor at the meeting of creditors.[1]  The document also contained the following statement:

> If I have shared or have agreed to share my fees with anyone who is not a member or an associate of my law firm, I have attached a list of those persons and a copy of any writing memorializing that agreement.

Nothing was attached to her Disclosure.  The Disclosure was dated March 28, 2005, and filed with the petition on March 29, 2005.

The case trustee, John S. Lovald, conducted the meeting of creditors on May 20, 2005.  His Statement of Conclusion did not indicate the name of counsel who attended the meeting with Debtor.  There was little other activity in the case because Trustee Lovald did not find any non exempt assets to liquidate to pay creditors.

On May 18, 2005, Cheryl Reed, Debtor's former live-in companion, filed a nondischargeability complaint against Debtor for a debt arising from his use of checks on her credit card account (Adversary No. 05-3004).  Debtor filed an answer *pro se* on June 9, 2005.

A short initial pre-trial conference was held June 28, 2005. Appearances, both telephonic, were made by Christina L. Fischer for Plaintiff Reed and Rose Ann Wendell for Defendant-Debtor.  Attorney Fischer reported an agreement had been reached whereby Defendant-Debtor would sign a reaffirmation agreement.  The matter was continued 60 days to allow the rescission period on the reaffirmation agreement to expire. The reaffirmation agreement was filed in Debtor's main bankruptcy case on July 6, 2005.  The agreement was approved by order entered July 21, 2005, following a required hearing since Debtor signed the agreement *pro se.*

By letter dated September 9, 2005, Attorney Fischer advised the Court Debtor had revoked the reaffirmation agreement.  She therefore requested a trial on Reed's nondischargeability complaint.  A second telephonic pre-trial conference was held October 4, 2005.  Attorney Fischer appeared for Reed, and Debtor

---

[1]  In his Statement of Financial Affairs, question 9, Debtor did not disclose any payment to attorneys related to debt counseling or bankruptcy within one year of the case.

*In re Curtis L. Johnson*
November 7, 2006
Page 3

appeared *pro se*. A final pre-trial conference was set for December 13, 2005. The Court advised the parties if they did not have an agreement by then, a trial date would be set. An agreement was not reached, and a trial was set for February 15, 2006.

At the trial, Reed testified briefly that Debtor had given her a repayment agreement that he said Attorney Al Arendt had prepared. It was offered as Exhibit 1. Exhibit 1 contained a date line of April 2004 and was unsigned. Debtor objected to the admission of the exhibit and stated he did not know where the document had come from. Debtor later testified he had never seen Exhibit 1 before it was disclosed in preparation of the trial. However, Debtor also stated Al Arendt "was my bankruptcy lawyer" and he [Debtor] had talked to Attorney Arendt "a bunch" regarding the subject credit card account debt.

In response to Debtor's unexpected testimony on February 15, 2006, the Court wrote Assistant United States Trustee Bruce J. Gering a letter on February 22, 2006. In the letter, the Court referenced the exhibit and testimony described above and stated:

> Defendant-Debtor's statement regarding Attorney Arendt serving as his bankruptcy attorney is disconcerting and may be problematic. The petition was filed March 29, 2005, before Attorney Arendt was readmitted to the Federal Bar on April 19, 2005. Debtor's petition was signed by Attorney Rose Ann Wendell. She filed a disclosure of compensation indicating she had received $1,000 from Debtor and was not sharing compensation with anyone. If Attorney Arendt represented Debtor after April 19, 2005, he failed to file a disclosure of compensation and comply, if necessary, with Local Bankr. R. 2014-2.
>
> An investigation appears warranted. Depending on what you learn, we may also need to refer the matter to the State Bar. Thank you.

On March 20, 2006, the United States Trustee filed a motion seeking an examination of Attorney Wendell's transactions with Debtor under 11 U.S.C. § 329(b). This Bankruptcy Code section allows the Court to review for reasonableness the fees a Chapter 7 debtor pays to his bankruptcy counsel. Attorney Wendell retained Robert C. Riter, Jr., to represent her and filed a timely response on April 3, 2006. In the response, Attorney Wendell stated she was filing a Supplemental Disclosure of Compensation and would

*In re Curtis L. Johnson*
November 7, 2006
Page 4

cooperate fully in the examination.

Attorney Wendell filed the Supplemental Disclosure of Compensation on April 3, 2006. In this document, Attorney Wendell stated she had received $209 from Attorney Arendt in late March 2005 and she had used the money to pay Debtor's Chapter 7 filing fee. Attorney Wendell said she did not receive any other money. She also disclosed that while she had filed Debtor's petition, schedules, and Statement of Financial Affairs, she had *not* prepared them. Attorney Wendell further stated:

> I was requested by Attorney Al Arendt to sign and file various documents he had prepared for the Debtor because Mr. Arendt advised that while he was admitted to practice in state court, he had not yet been admitted to practice in federal court but would be shortly. He advised that Mr. Johnson wanted the filing to occur promptly. Accordingly, as an accommodation to Mr. Arendt and Mr. Johnson, I executed the papers and saw to their filing.
>
> At the time I filed the papers, I was advised by Mr. Arendt that nothing further would be anticipated nor expected of me on this matter because by the first meeting of creditors, Mr. Arendt expected to be licensed so as to be able to participate in the first meeting of creditors. I further understand that Mr. Arendt did participate in that first meeting. I did not participate in any proceedings in the above matter, nor had I agreed to nor expected to.
>
> Other than filing the initial papers for the Debtor, I performed no legal services whatsoever for him during his bankruptcy proceeding.

A hearing on the United State Trustee's § 329(b) motion was set for April 25, 2006.

On April 7, 2006, Attorney Arendt filed a *Response to General Order Adopting Standardized Disclosure of Compensation and Supplemental Disclosure of Compensation Forms* ("Response").[2]

---

[2] Local Bankruptcy Rule 2016-1(a) was adopted on October 1, 2003. It provides a recommended form for a Disclosure of Compensation and also a Supplemental Disclosure of Compensation. This Local Rule was preceded by a general order dated February 13, 2001, that contained the same provisions and recommended forms.

*In re Curtis L. Johnson*
November 7, 2006
Page 5

Attorney Arendt stated, in part:

> As the Court may be aware, I was readmitted to practice law on February 18, 2005 by the South Dakota Supreme Court. I applied to be readmitted back into federal court at the same time. That admission was finalized on April 19, 2005. During March, I contacted the U.S. Attorney's Office because of the delay in my admission application. They indicated that they were trying to determine if I had paid the assessment levied against me as part of my readmission. I explained that since that was a condition precedent to my admission, it was clear that I had to have paid that. I provided copies of the cancelled check and was eventually readmitted into federal.
>
> [Curt] Johnson approached me on March 9, 2005 about a child support dispute. At that time, he signed the attached contract, which provided for a $200 retainer. In addition, he discussed a garnishment problem and a bad check problem. Johnson wanted to know how to stop the garnishment. I advised him about filing a Bill of Exemptions in state court, or filing bankruptcy. He indicated he wanted to file bankruptcy. I told him that I could not do that because I had not been readmitted. The matter was left alone for approximately three weeks, when he approached me again in late March, and indicated that he had to get the bankruptcy started. I again reiterated that I could not do anything for him. However, I advised him that I would attempt to have another attorney file the bankruptcy. I approached Rose Ann Wendell and asked her if she would do it. Rose Ann indicated that she would be willing to file the bankruptcy for Mr. Johnson. I have read Rose Ann's response, and do not disagree with said response. However, after I asked her how much she would charge Johnson, she indicated that she did not want any fees, and would I prepare the Petition and schedules for her. I then sat down with Johnson, completed the Petition and Schedules, and transported them, along with Johnson's filing fee, to her office. After that, I did not hear anything further on the bankruptcy until Rose Ann told me about the first meeting of creditors on May 20, 2005. I

---

The Court assumes it was this General Order that Attorney Arendt referenced in his pleading.

*In re Curtis L. Johnson*
November 7, 2006
Page 6

indicated to Rose Ann that because she wasn't asking for any fee that I would handle the first meeting of creditors.

Sometime in early May I was contacted by Cheryl Reed. I responded by mailing her a letter on May 6, 2005, attached hereto, advising her that I was not representing Mr. Johnson. At about the time of the first meeting of creditors on May 20, 2005, Reed sued Johnson in an adversarial action in bankruptcy court. I advised Johnson that I could not represent him in either action because I felt there was a potential conflict of interest, due to my prior representation of Cheryl Reed. Rose Ann Wendell wrote to me on June 10, indicating that she had spoken to Reed's attorney, Christie Fischer, and was concerned about her obligations in this bankruptcy.

Johnson continued to have legal problems throughout that summer and fall. I represented him in a criminal matter in Hughes County Magistrate Court. Ms. Reed also obtained a Protection Order against him, and he approached me about that. I referred the matter on to Pat Carlson, who represented him in a 2-day trial on that protection order. Johnson further had stalking charges placed against him in state court. Again, in spite of his requests, I did not represent him. Johnson repeatedly approached me and sought legal advice on a variety of issues. On those that I did not have a conflict, I represented him, including child support and criminal matters. On the conflict issues, I did not appear for him, or represent him, including bankruptcy court. In spite of explaining this repeatedly to Mr. Johnson, he attempted to seek my advice. I made it clear to him that I could not represent him on issues in which I felt there was a conflict.

I understand from my conversation with the U.S. Trustee that the Court is concerned that I was practicing bankruptcy law before April 19. I answered Johnson's bankruptcy questions, drafted the Petition, and sat in for Rose Ann at the 341 hearing, but have not agreed to formally appear for Mr. Johnson on these bankruptcy matters. Initially, it was because I had not been admitted. After that, it was because I felt that I had a potential conflict with Ms. Reed. I have spoken to Johnson, and I have told him [t]hat he would have to represent himself, or hire another lawyer. I sent him to

*In re Curtis L. Johnson*
November 7, 2006
Page 7

>    other legal counsel in either the bankruptcy matter, or the protection orders.
>
>    I have examined all of my records in this matter. I understand there exists a type-written April, 2005 unsigned statement by Johnson to the effect that he acknowledges owing the debt to Reed. I have not seen that statement. However, I see nothing in my records indicating that I drafted this for Johnson, nor do I have any memory of drafting this for Johnson. I have always attempted to have Mr. Johnson resolve his conflicts with Ms. Reed. The course of action he has chosen has been his, and his alone.
>
>    Johnson has paid me $600 in March of '05, and an additional $100 in May of '05. $209 of this money was utilized to pay his filing fee, $200 was applied on the March 9 contract, and the balance was used to pay for his criminal fee. I have not received any monies for a bankruptcy fee from Mr. Johnson.
>
>    I have attempted to comply with the letter, if not the spirit, of my suspension from practicing in federal court. I had hoped that Rose Ann would play a more active role in representing Mr. Johnson, but after the filing, she made it clear that she wanted minimal involvement with this case.
>
>    I stand ready, willing and able to respond to any inquiries of me personally, or about my records on this matter.

Attorney Arendt attached to his pleading a letter to Plaintiff Reed dated May 6, 2005, in which he advised her that he would not be representing Debtor in the adversary proceeding; a copy of a civil retainer agreement with Debtor dated March 9, 2005, for "Johnson v. Perryman" (*not* signed by Debtor); and a copy of a criminal retainer agreement with Debtor dated May 27, 2005 (signed by Debtor).

   The hearing on the review of Attorney Wendell's fees under § 329(b) was held April 25, 2006. Attorney Wendell acknowledged, contrary to her signatures on the petition and on her original Disclosure of Compensation, she had not prepared or reviewed any of the bankruptcy documents filed in Debtor's case, including her original Disclosure of Compensation, before she signed and filed them.

*In re Curtis L. Johnson*
November 7, 2006
Page 8

During questioning from the Court, Attorney Wendell said she disagreed with some facts stated in Attorney Arendt's April 7, 2006, *Response*. She stated she never discussed fees with Attorney Arendt, except that he would give her a check for the filing fee. She further stated she did not ask Attorney Arendt to prepare the bankruptcy documents. Instead, she said it was always her understanding Attorney Arendt would prepare them, "but just couldn't file [the bankruptcy] because he was not yet re-licensed in federal court." During her testimony, Attorney Wendell also stated she had no clear recollection of discussing the meeting of creditors with Attorney Arendt. She only recalled that she had received a letter from Attorney Arendt to Debtor stating he (Attorney Arendt) would attend the meeting with Debtor. She said she learned from Attorney Arendt later in the case about his potential conflict of interest in representing Debtor against Reed's nondischargeability complaint. Finally, Attorney Wendell took issue with Attorney Arendt's statement that he wished she had taken a more active role in the case. She said Attorney Arendt never asked her to do so and she never said she would.

At the April 25, 2006, hearing, Attorney Wendell acknowledged her original Disclosure of Compensation said she received fees of $1,000 for the bankruptcy case. She affirmed she had not received any money except the $209 filing fee that passed through her account to the Bankruptcy Clerk.

Attorney Wendell submitted five exhibits at the April 25, 2006, hearing. The exhibits included a $209 check from Attorney Arendt's office to her dated March 23, 2005; a March 28, 2005, check from Attorney Wendell to the Bankruptcy Clerk; a letter dated April 25, 2005, from Attorney Arendt to Debtor reminding him of the § 341 meeting of creditors, which also notified Attorney Wendell he would handle that meeting; and a May 19, 2005, cover letter to Attorney Arendt from Attorney Wendell forwarding to him Reed's nondischargeability complaint. Attorney Wendell's final exhibit on April 25, 2006, was a letter dated June 10, 2005, from her to Attorney Arendt. She stated therein:

> Christy Fischer and I spoke again this morning concerning Curt Johnson's bankruptcy case. Yesterday, she received a letter from Curt which advised her that he was representing himself in the adversary action. While the correspondence does resolve the adversary action problem, it does not resolve the issue of who is representing Curt for the bankruptcy itself. Since the adversary action and the bankruptcy are essentially inseparable, Ms. Fischer still does not feel that she can speak to Curt

*In re Curtis L. Johnson*
November 7, 2006
Page 9

>    directly because Curt has an attorney of record - me - on
>    the bankruptcy.  This places me in a precarious position
>    because, after merely filing the documents on your
>    behalf, I have had no further involvement in the
>    proceedings.  If additional pleadings will be necessary
>    for Curt to dismiss a creditor and/or reaffirm the debt,
>    I do not want to be involved and I do not want to
>    continue to be the attorney of record.  However, the
>    Court will not likely permit me to withdraw as attorney
>    of record in the middle of the proceedings.
>
>    Al, I do not want to be placed in the middle of this case
>    any longer.  Please figure out a way to deal with it and
>    let me know as soon as possible.

Since Attorney Wendell had not received any compensation, the Court did not order a disgorgement of any fees, but the Court advised her and her counsel it would refer the matter to the State Bar.  Attorney Wendell stated she now understood her actions lacked candor with the Court, but at the time she thought she was just extending a professional courtesy to Attorney Arendt.

On May 2, 2006, the United States Trustee filed a motion under § 329(b) seeking a review of Attorney Arendt's involvement in the case and any fees he may have received.  The United States Trustee noted therein that Attorney Arendt's statement in his April 7, 2006 *Supplement* that he had not received any compensation from Debtor for bankruptcy services conflicted with Attorney Wendell's testimony on April 25, 2006.  Attorney Arendt retained A. Thomas Pokela as counsel, and both appeared at the scheduled hearing on the matter June 15, 2006.

On June 15, 2006, Debtor and Attorney Arendt both testified.  One exhibit was received from Assistant United States Trustee Gering.  It was the letter Attorney Arendt had written to Debtor dated April 25, 2005, in which he reminded Debtor of the meeting of creditors and told Debtor to be at his office at a stated time and to bring with him a fee balance of $350.  In this letter Attorney Arendt also stated he was copying Attorney Wendell with the letter to advise her he would represent Debtor at the meeting of creditors.

Attorney Arendt presented five exhibits.  His Exhibit A included the order that reinstated him before the federal District Court (dated April 19, 2005, and entered April 20, 2005); an April 15, 2005, letter that Attorney Arendt wrote to then Chief Judge Lawrence Piersol requesting reinstatement; a receipt from the State Bar to Attorney Arendt dated February 22, 2005, for reimbursement

*In re Curtis L. Johnson*
November 7, 2006
Page 10

of costs; a letter dated February 22, 2005, from the State Bar acknowledging receipt of the reimbursement check from Attorney Arendt; and Attorney Arendt's reinstatement order from the South Dakota Supreme Court dated February 17, 2005. Exhibit B included a March 14, 2005, letter from Attorney Arendt to Debtor discussing a state court action regarding child support; a cover letter regarding a child support modification order dated November 12, 2004; the civil retainer agreement (not signed by Debtor) dated March 9, 2005; and some handwritten notes, apparently related to the child support issue. The notes are not dated. Attorney Arendt's Exhibit C included the same April 25, 2005, letter that was the United States Trustee's Exhibit 1 and was also one of Attorney Wendell's exhibits at the April 25, 2006, hearing; a letter dated May 10, 2005, from Attorney Fischer to Attorney Arendt in which she stated her understanding that Attorney Arendt was not representing Debtor in the adversary proceeding with Reed and that she (Attorney Fischer) intended to contact Debtor directly; a May 12, 2005, letter from Attorney Wendell to Attorney Arendt in which she stated, in pertinent part:

> Enclosed please find a reaffirmation agreement from American State Bank and a letter from Christina Fischer regarding Curt Johnson's bankruptcy. When Christina and I spoke on May 9th, I advised her that it was my understanding that you were his attorney. If this is no longer the case, I [would] appreciate it if you would let me know because I continue to get some correspondence on the matter.

Exhibit C also included several more letters. One dated June 9, 2005, from Debtor to Attorney Fischer, advised Attorney Fischer that he was "not using any attorney in this case" and that he would agree not to discharge his debt to Reed. Another, dated June 10, 2005, was the letter from Attorney Wendell to Attorney Arendt, which was received in evidence on April 25, 2006, and is discussed above. A third was from Attorney Fischer to both Attorney Arendt and Attorney Wendell and dated June 10, 2005. Attorney Fischer expressed, at length, her frustration with knowing who, if anyone, was representing Debtor. She also stated she had received two telephone calls from Attorney Arendt attempting to resolve the adversary proceeding with Reed. In her penultimate paragraph, Attorney Fischer stated:

> As I am sure you can both tell from this letter, I am extremely frustrated and feel that I have been mislead regarding this matter. I am writing this letter out of professional courtesy to let you know that if the

*In re Curtis L. Johnson*
November 7, 2006
Page 11

>       situation is not taken care of by June 14, 2005 it is my
>       intent to file a motion with the court to have both of
>       you produce or prove by your oath or otherwise the
>       authority under which either of you appear in the
>       bankruptcy hearing and the adversary action filed with
>       the bankruptcy action. (SDCL 15-18-2). It is not my
>       intention to involve the Court in more than what is
>       necessary[;] however, I feel that the simple issue of who
>       Mr. Johnson's attorney is has gone on way too long.
>       Therefore if the situation is not dealt with immediately
>       I will be asking for the Court's assistant to determine
>       this matter.

The next letter in Attorney Arendt's Exhibit C was dated June 22, 2005, and it was from Attorney Arendt to Attorney Wendell. He stated in the letter he thought the matter of Reed's claim was now resolved because Debtor had "removed"[3] Reed as a creditor and had reaffirmed the debt. The next letter was dated September 22, 2005, and was written by Attorney Wendell to Attorney Arendt. She asked what was going on in Debtor's case and stated she was not available on October 4, which was the date for the second pre-trial conference in the adversary proceeding between Reed and Debtor. Attorney Wendell also stated she did not want to be involved in the case. The final letter in the exhibit was dated September 28, 2005, and was from Attorney Arendt to Attorney Wendell. He said he did not know what was going on in the case, and he asked Attorney Wendell if she had attempted to withdraw. He also stated he would prepare "the necessary papers to allow you to withdraw."

   Attorney Arendt's Exhibit D included a power of attorney Debtor gave to Attorney Arendt dated May 9, 2005, regarding an NSF check charge; a May 25, 2005, letter from Attorney Arendt to Debtor regarding an arraignment on the check charges and payment of attorneys' fees of $350; a criminal retainer agreement dated May 27, 2005, signed by Debtor; and a copy of a June 24, 2005, judgment of conviction regarding the NSF check charge. Attorney Arendt's final exhibit, Exhibit E, included a receipt from his office to Debtor for $600 dated March 16, 2005, which indicated $500 was from a check from a Kathleen Strohfus and another $100 was cash; a deposit slip for Attorney Arendt's American State Bank account that reflected a deposit of $400 from Debtor with a hand-written note of "NSF" on it;

---

   [3] Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure recognizes any procedure whereby a creditor's claim can be deemed nondischargeable by removing it from the debtor's schedules.

*In re Curtis L. Johnson*
November 7, 2006
Page 12

a deposit slip for the Arendt Law Office account at Wells Fargo Bank dated March 17, 2005, that included a deposit of $100 from "Curt Johnson" and a $500 deposit from a "K. Strohfus" and Curt Johnson; and a June 15, 2005, statement from the Al Arendt Trust Account at American State Bank that reflected deposits on May 20 and May 27, 2005, and an "Other Deductions from your account" line entry that provided: "Deposit Item Ret  Lloyd C. Johnson  2492  400.00."

    At the June 15, 2006, hearing, the United States Trustee presented Debtor as a witness. He testified he first contacted Attorney Arendt regarding bankruptcy in the "[f]irst part of March 2005." He could not recall whether they also discussed child support issues. Debtor stated Attorney Arendt advised him he could not file the bankruptcy for him because he was not yet reinstated in federal court but would be "shortly." Debtor thought Attorney Arendt intended to "get the ball rolling" and then file it when he was reinstated. Debtor also stated he gave Attorney Arendt some money for the bankruptcy. A garnishment soon followed, so Debtor said he met with Attorney Arendt again on March 22, 2005, and completed the paperwork. He said Attorney Arendt told him he had contacted another attorney to file the case or else Attorney Arendt contacted Attorney Wendell during their meeting; he could not exactly recall. Debtor said he never met with Attorney Wendell. Debtor acknowledged Attorney Arendt went ahead with the bankruptcy paper work, though he was not yet reinstated, as a favor to Debtor due to the impending garnishment.

    Debtor testified Attorney Arendt quoted him a total fee of $1,000 for the bankruptcy work and he paid him $600 ($100 cash and $500 check from Debtor's mother) about March 16, 2005. He said he thought he had signed a fee agreement but did not have a copy. He also testified he had not seen a copy of the civil fee agreement Attorney Arendt had until it became an attachment to Attorney Arendt's April 7, 2006, *Response*. Debtor said he gave Attorney Arendt a check after they returned to Attorney Arendt's office following the meeting of creditors, and acknowledged the check bounced. He thought he later made good on that check. Debtor further recalled he gave Attorney Arendt another $300 for some state court civil matters.

    Debtor acknowledged Attorney Arendt told him he could not represent him in the adversary proceeding commenced by Reed because he had a conflict of interest. Debtor also stated, "Well, it kind of felt like to me he had a conflict of interest unless I had another $3,000 he'd be able to -- he'd be able to do it."

    Attorney Arendt also testified on his own behalf. He first

*In re Curtis L. Johnson*
November 7, 2006
Page 13

reviewed his several exhibits. He then reviewed the fees he had received from Debtor. Attorney Arendt acknowledged others in his office handle 90% of the fees that are paid to him, so it was possible he was not always aware when someone paid fees. However, he said Debtor had personally tendered his payments directly to him, not his staff. He said he received from Debtor $600 on March 16, 2005, a $400 check on the date of Debtor's meeting of creditors, and $100 later to cover part of the $400 check after it bounced. It was Attorney Arendt's understanding the $600 was the retainer for the child support matter. Attorney Arendt also acknowledged Debtor did not sign the civil retainer agreement.

As to his initial conversation with Attorney Wendell, Attorney Arendt testified he explained Debtor's situation with the garnishment and his own inability to file the bankruptcy. He said Attorney Wendell indicated she would file the bankruptcy paperwork if he sent it to her. He stated the conversation was short, only two or three minutes long. Attorney Arendt also stated while the Disclosure of Compensation said Debtor had paid $1,000 for the legal fees and filing fee for the bankruptcy, he had not received any money for the bankruptcy. He said he completed the Disclosure of Compensation in anticipation of filing it later after he was re-admitted before the federal bar and he failed to correct the oversight when Attorney Wendell filed the case earlier. He said he used $200 of the $600 received on March 16, 2005, for the bankruptcy filing fee. Attorney Arendt also stated the $350 fee referenced in his April 25, 2005, letter to Debtor was for the criminal retainer, not the bankruptcy, although the letter discussed Debtor's appearance at the bankruptcy meeting of creditors.

Attorney Arendt was asked why he did not file a notice of appearance for Debtor after he was admitted to the federal bar. Attorney Arendt said that had earlier been his intention but he decided not to do so after Reed, who was a former client, became active in the case.

During the hearing, Attorney Arendt disagreed with Debtor's testimony that he (Debtor) felt Attorney Arendt would have represented him (Debtor) in the adversary proceeding with Reed for $3,000, regardless of Attorney Arendt's conflict of interest. Attorney Arendt stated the $3,000 reference in his conversation with Debtor was only to advise Debtor that is what it would cost him to retain someone else to handle the matter.

Attorney Arendt testified he did not feel he was violating any rules by completing the bankruptcy paperwork for Debtor before he was admitted to the federal bar. He also acknowledged "that once

*In re Curtis L. Johnson*
November 7, 2006
Page 14


[Debtor's] john henry got put on those papers, it probably was." He further stated,

> I did not intend to go and practice, you know, in Bankruptcy Court without being readmitted; didn't do that at all.  The only reason this thing became a problem is because Mr. Johnson's financial difficulties and the pressure he put on me.  And you know, I'm a big boy.  I should have told him he needed to leave, but I didn't. I tried to find another attorney.

He further acknowledged he considers Attorney Wendell a friend and he feels "terrible" about her involvement in the matter.

During his testimony, Attorney Arendt referenced 11 U.S.C. § 110, which governs the preparation of bankruptcy documents by a non lawyer.

> Well, in the back of my mind, you know, I was aware that, you know, even non-lawyers can fill these forms out.  Obviously, I didn't comply with that because I should have signed and I should not have done certain things like Bills of Exemption. But, you know, that was one of the reasons why I didn't think I was, you know, violating the rules; just filling the paperwork out on March 17th.

At the conclusion of his testimony, Attorney Arendt summarized his earlier testimony.  As to the fees in particular, he testified that by the end of March 2005 Debtor owed him $200 for the conference on March 9, 2005, and $350 for a retainer on the criminal matter.  He stated the $600 he had received was in part for the bankruptcy work and in part for the "other legal work."  Regarding the $350 fees requested in his April 25, 2005, letter to Debtor, Attorney Arendt indicated Debtor would know the $350 was for his criminal work, rather than the bankruptcy, because Debtor owed him $350 for the criminal work.

Attorney Arendt's testimony on June 15, 2006, varied from his April 7, 2006, *Response* on a few matters, most notably regarding when he and Attorney Wendell discussed the meeting of creditors. In his *Response* Attorney Arendt said Attorney Wendell contacted him about the meeting of creditors and he told her he would handle it since she was not taking a fee.  That conversation was not clearly referenced during Attorney Arendt's June 15, 2006, testimony.  At that hearing, Attorney Arendt intimated Attorney Wendell was advised he (Attorney Arendt) would attend the meeting of creditors with

*In re Curtis L. Johnson*
November 7, 2006
Page 15

Debtor only through his April 25, 2005, letter to Debtor, on which he copied Attorney Wendell.

*Discussion*. Section 329(b) governs a determination of whether fees already received by a debtor's attorney, from whatever source paid, should be disgorged. The standard applied is whether the compensation received exceeds the reasonable value of the services rendered. 11 U.S.C. § 329(b). The fees that are reviewable under § 329(b) include those paid to the debtor's attorney within one year before the petition for legal services in "contemplation of or in connection with the [bankruptcy] case," as well as post-petition compensation. 11 U.S.C. § 329(a); *Schroeder v. Rouse (In re Redding)*, 247 B.R. 474, 477-78 (B.A.P. 8th Cir. 2000). The sole purpose behind § 329(b) is to prevent overreaching by a debtor's attorney. *Redding*, 247 B.R. at 478.

Attorney Arendt's testimony and Debtor's testimony regarding fees were not always reconcilable, and Attorney Arendt kept poor records of the fees Debtor agreed to pay for the various legal services and those Debtor actually paid. Thus, it is not abundantly clear how much Debtor actually paid for his bankruptcy services. Four circumstances are clear, however: Attorney Arendt performed the legal work for Debtor's bankruptcy but that fact was hidden from the Court, creditors, and the case trustee; Attorneys Arendt and Wendell used $209 of the money Debtor paid Attorney Arendt for Debtor's Chapter 7 filing fee; the total fees paid by Debtor to Attorney Arendt for the various criminal, family law, and bankruptcy matters totaled about $700; despite the attorney-related problems, Debtor benefitted from his bankruptcy case since about $25,000 in unsecured debt was discharged; and even had all $700 been paid for Debtor's bankruptcy work, that sum was not excessive in light of the usual fees in the District for a Chapter 7 case of limited difficulty.

The unanswered question is whether Attorney Arendt should be ordered to disgorge the bankruptcy fees he received, even if "reasonable" in the District, because he was not admitted to the federal bar at the time the services were rendered and he "ghosted" his legal services by having another attorney sign the necessary documents. To that question, the Court must answer "yes." *See Brown v. Goode, Peterson & Hemme (In re Brown)*, 270 B.R. 43, 51-52 (Bankr. D.S.C. 2001)(fees disgorged from attorney not admitted in particular federal district); *In re Soulisak*, 227 B.R. 77, 82-83 (Bankr. E.D. Va. 1998)(fees appropriately disgorged for unethical conduct); *In re Damon*, 40 B.R. 367, 376-79 (Bankr. S.D.N.Y. 1984)(fees appropriately forfeited if an attorney violates ethical standards)(cites therein); and *In re Devers*, 33 B.R. 793, 798-99

*In re Curtis L. Johnson*
November 7, 2006
Page 16

(D.C.D.C. 1983)(an attorney's conduct is clearly relevant when determining the value of his services); *see also Continental Illinois Nat. Bank & Trust Co. v. Charles N. Wooten, Ltd. (In re Evangeline Refining Co)*, 890 F.2d 1312, 1323-28 (5th Cir. 1989)(compensation may be denied for false statements to the court); and *In re Davison*, 79 B.R. 859, 861 (Bankr. W.D. Mo. 1987)(compensation may be denied for attorney misconduct). To allow Attorney Arendt to keep any fees would instead be a blanket condonation of what transpired in this case and open the door for others, legally trained or not, to practice law without the appropriate authority and circumvent the requirements of § 329(b) and Rules 2016(b) and 9011. Harm to Debtor or the estate need not be shown. *See Briggs v. LaBarge (In re McGregory)*, 340 B.R. 915, 922-23 (B.A.P 8th Cir. 2006).

Since Attorney Arendt did not provide the Court with adequate fee records so as to allow it to determine how much was paid for what services, the entire estimated $700 paid by Debtor to Attorney Arendt will be deemed related to his bankruptcy. The $209 paid on Debtor's filing fee will not be disgorged. The $491 balance shall be returned to Kathleen Strohfus, who paid $500 of the $700 Attorney Arendt received. An appropriate order will be entered.

Sincerely,

Irvin N. Hoyt
Bankruptcy Judge

INH:sh

CC: case file (docket original; serve parties in interest)
    Debtor Lloyd Curtis Johnson
    Robert C. Riter, Jr., Esq.

On the above date, a copy of this document was mailed or faxed to the parties shown on the Notice of Electronic Filing as not having received electronic notice and Debtor(s), if Debtor(s) did not receive electronic notice.

Linda M. LaFortune
Acting Clerk, U.S. Bankruptcy Court
District of South Dakota

**NOTICE OF ENTRY**
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Linda M. LaFortune
Acting Clerk, U.S. Bankruptcy Court
District of South Dakota